UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN SANTOS,

                Petitioner,

v.

DAVID ROCK, Superintendent, Great Meadow
Correctional Facility, and ANDREW CUOMO,
Attorney General, New York State,

                Respondents.

08 Civ. 10997 (RO)

**ORDER**

OWEN, District Judge:

    Petitioner filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 seeking relief on the following grounds: 1) that he was denied effective assistance of trial counsel because counsel failed to object to the wording of the verdict sheet, which Petitioner argues incorrectly did not incorporate references to the Extreme Emotional Disturbance ("EED") defense into any of the first-degree murder charges; 2) that he was denied effective assistance of counsel because counsel did not object to the trial judge's oral charge to the jury, which Petitioner argues confused the jury; and 3) that he was denied effective assistance of counsel because counsel did not object to the prosecutor's reference during closing arguments to Petitioner's alleged sexual assault of one of the victims, which Petitioner claims was impermissibly inflammatory.

    Magistrate Judge Theodore H. Katz issued a Report and Recommendation ("Report") in which he recommended that the petition be denied. As explained below, the Court concurs with

the Report and Recommendation of Judge Katz, and adopts it in its entirety. Accordingly, the petition for a writ of habeas corpus is hereby dismissed.

## BACKGROUND

The factual and procedural background of this case is provided in detail in the Report, and will not be repeated here in full. On June 12, 2002, police responded to reports that a man had been seen breaking into an apartment building on the Lower East Side of Manhattan, and discovered that two of the building's units had been robbed and that multiple victims had been killed. Petitioner was arrested as he was leaving the building. On his person was the murder weapon, as well as valuables belonging to the victims. Petitioner later admitted to the crimes upon questioning at the police precinct, and was charged with six counts of Murder in the First Degree, nine counts of Murder in the second degree, three counts of Manslaughter in the First Degree, one count of Burglary in the First Degree, one count of Criminal Use of Firearm in the First Degree, and one count of Criminal Possession of a Weapon in the Second Degree.

At trial, the prosecution presented overwhelming evidence of that Petitioner was responsible for the crimes, including Petitioner's confession, and DNA and fingerprint evidence. Petitioner's principal defense was that at the time he committed the crimes, he was under the influence of EED which he suffered as a result of sexual abuse he had experienced earlier in his life, which had been exacerbated by recent traumatic events in his life. Petitioner also presented an intoxication defense.

Petitioner was convicted on November 19, 2003 in New York State Supreme Court after a jury trial of six counts of Murder in the First Degree, (N.Y. Penal Law §§ 125.27(1)(a)(vii) and 125.27(1)(a)(viii)), two counts of Burglary in the First Degree (N.Y. Penal Law § 140.30(1)(1)), one count of Criminal Use of a Firearm in the First Degree (N.Y. Penal Law § 265.09(1)(1)), and

one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(2)). Petitioner was sentenced to six terms of life imprisonment without parole, three terms of twenty-five years in prison, and one term of five to fifteen years in prison.

Petitioner's conviction was affirmed unanimously by the Appellate Division, First Department on June 26, 2007. *People v. Santos*, 41 A.D.3d 324, 838 N.Y.S.2d 74 (1st Dep't 2007). On September 26, 2007, the New York Court of Appeals denied Petitioner leave to appeal. *People v. Santos,* 9 N.Y.3d 926, 844 N.Y.S.2d 181 (2007).

Petitioner then filed this Petition for a Writ of Habeas Corpus on December 18, 2008, under 28 U.S.C. § 2254. Magistrate Judge Theodore H. Katz issued a Report and Recommendation, in which he recommended that the petition for a writ of habeas corpus be denied. (Docket Entry No. 12.) Petitioner filed objections to the Report. (Docket Entry No. 14.) This case was thereafter transferred to this Court.

## DISCUSSION

### A. Standard of Review

United States Magistrate Judges hear dispositive motions and make proposed findings of fact and recommendations, generally in the form of a Report and Recommendation. In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

A party may file "specific written objections," Fed R. Civ. P. 72(b), to a Magistrate Judge's proposed findings and recommendations, and in that case, the district court has an obligation to make a *de novo* determination as to those portions of the Report and Recommendation to which objections were made. A district court judge, in making such

determination, has discretion in the weight placed on proposed findings and recommendations and may afford a degree of deference to the Report and Recommendation. Objections to a Report and Recommendation are to be "specific and are to address only those portions of the proposed findings to which the party objects." Objections that are "merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke *de novo* review." See *Vega v. Artuz*, No. 97 Civ. 3775, 2002 WL 31174466, at *1, 2002 U.S. Dist. LEXIS 18270 (S.D.N.Y. Sept. 30, 2002).

Where no timely objection has been made by either party, a district court need only find that "there is no clear error on the face of the record" in order to accept the Report and Recommendation. *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court also reviews the Report and Recommendation for clear error.

### B. Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a federal remedy for state prisoners if their continued custody is in violation of federal law. An application for a writ of habeas corpus pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)—(2).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta," of the Court's decisions as of the time of the state court decision at issue. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of the Supreme Court's clearly established precedent in a state court decision can occur in two ways. First, a state court decision involves an unreasonable application of Supreme Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular case. In addition, a state court decision involves an unreasonable application of Supreme Court precedent if the state court unreasonably extends a legal principle to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams* at 407.

In order for a federal court to find that the state court's application of Supreme Court precedent was unreasonable, the decision must be objectively unreasonable rather than simply incorrect or erroneous. *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). This Circuit has stated that the standard is "somewhere between merely erroneous and unreasonable to all reasonable jurists." *Overton v. Newton,* 295 F.3d 270, 276 (2d Cir.2002). A federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently.

The factual findings made by state courts are presumed to be correct under the second prong of the AEDPA, and petitioner has the burden to rebut this presumption by "clear and convincing evidence." § 2254(e)(1); *see Nelson v. Walker.* 121 F.3d 828, 833 (2d Cir. 1997). The deferential standard of review under the AEDPA will be triggered when the state court has

both adjudicated the federal claim "on the merits," and reduced its disposition to judgment. *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001).

### C. Strickland Standard

The Sixth Amendment provides a criminal defendant the "right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441 (1970). The Supreme Court has established a two-part test for evaluating claims of ineffective assistance under *Strickland v. Washington. Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *accord Morales v. United States,* 635 F.3d 39, 43 (2d Cir.2011). A defendant must first "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* 466 U.S. at 687. A defendant must then "show that the deficient performance prejudiced the defense." *Id.*

There is a strong presumption that the assistance rendered by an attorney is objectively reasonable., and judicial scrutiny of counsel's performance should be highly deferential. *Roe v. Flores–Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) The performance inquiry accordingly examines the reasonableness of counsel's performance "from counsel's perspective at the time" and should consider all circumstances. *Strickland,* 466 U.S. at 688, 689.

Accordingly, any actions or omissions that are reasonably considered sound trial strategy do not constitute ineffective assistance of counsel. *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2001). Thus, strategic choices made after thorough consideration of facts and law are "virtually unchallengeable," and even strategic choices made after less than complete investigation do not amount to ineffective assistance-so long as the known facts made it reasonable to believe that further investigation was unnecessary. *Strickland,* 466 U.S. at 690–91.

To this extent, an attorney is not required to make "every nonfrivolous argument that could be made." *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001).

The second prong of *Strickland* demands that a habeas petitioner show prejudice, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694; *accord United States v. Caracappa,* 614 F.3d 30, 46 (2d Cir.2010). As such, a petitioner must "show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic,* 466 U.S. 648, 659 n. 26, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland,* 466 U.S. at 694. A habeas petitioner making a Strickland challenge must do more than "convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone,* 535 U.S. 685, 699, 122 S. Ct. 1843, 1852 (2002).   Thus, a petitioner "must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance." *Id.* at 698-99.

### D. Petitioner's Claims

Petitioner objects to the Report and Recommendation's findings that the verdict sheet and oral charge did not violate New York law and were not misleading, and that Petitioner's trial counsel did not provide ineffective assistance when he did not objects to the prosecutor's allegedly provocative statements during summation.

*1. Verdict Sheet*

Petitioner argues that the verdict sheet was misleading with regard to the first-degree murder charges because according to Petitioner it gave the jury the impression that EED did not apply to those charges. The Report found that this claim was without merit because the verdict

sheet accurately conveyed that that the EED defense applied to the first-degree murder charge and because the verdict sheets clearly identified the counts to which the EED defense was not applicable. The Report further found that any confusion on behalf of the jurors, of which there was no evidence, was cured by the court's instructions on the EED defense as it related to the first-degree murder charges. Petitioner's objections are without merit and are based on speculating that the jury ignored the court's instructions.

Petitioner also argues that he was provided ineffective assistance of counsel because the verdict sheet violated New York law, and accordingly when his attorney consented to the verdict sheet, Petitioner's conviction no longer was *per se* reversible. Specifically, New York law prohibits a verdict sheet that contains anything more than the charged offenses and possible verdict, absent consent of counsel for both parties to additional notations on the verdict sheet. Petitioner asks the Court to accept his speculative argument that had defense counsel refused to consent to the annotations on the verdict sheet, the trial judge might have nonetheless refused to alter the verdict sheet and would have thus submitted an improperly annotated to the jury, thereby rendering the conviction *per se* reversible. This we will not do.

The record shows that the drafting of the verdict sheet was deliberate and careful, and done with consideration to both Petitioner and the prosecution. The court engaged in extensive discussions with counsel when drafting the verdict sheet, and gave both attorneys the opportunity to review the final verdict sheet before the court charged the jury. It was professionally reasonable and in the Petitioner's best interests for the verdict sheet to be annotated as it was.

Because Petitioner's counsel acted properly in consenting to the verdict sheet, and because the Court will not engage in the pure conjecture required to find that in any likelihood the trial court would have committed reversible error by submitting an annotated verdict sheet to

the jury over defense counsel's objection, the Court agrees with the Report's finding that Petitioner fails to satisfy the *Strickland* standard on this claim.

### 2. Jury Charge

Petitioner argues that the charge given by the trial judge to the jury was misleading and confusing, and that because his attorney did not object to the charge, that Petitioner was not provided effective assistance of counsel. Specifically, Petitioner claims that the jury charge was too long, contained instructions that were confusing and contradictory, and led the jury to believe that if it found that the prosecution had proved the charged crimes beyond a reasonable doubt, that the jury was to end deliberations there and return a guilty verdict without considering the EED defense. In order to demonstrate an ineffective assistance of counsel standard based on counsel's failure to object to a jury instruction, Petitioner must show that such errors were so significant that they prejudiced the outcome of trial such that it undermines confidence in the outcome of the trial. *See Cox v. Donnelly*, 387 F.3d 193, 199-200 (2d Cir. 2004). Courts do not review jury instructions in isolation, but instead assess them on the whole to determine whether they provide the jury with a clear and accurate portrayal of applicable law. As such, even though part of a jury instruction may appear confusing, there is no error when as a whole they are clear and unambiguous. *See Jones v. United States*, 527 U.S. 373, 391 (1999).

Petitioner's arguments are without merit. As the Report states, the record demonstrates that any alleged deficiencies were cured by the court's detailed explanation of the EED defense. The court's charge to the jury was not too long, nor did it improperly shift discussion between the elements of the crime and principle of law. As the Report states, Petitioner was charged with 25 different criminal counts, and the jury was required to consider at least three mental states as well as various other factors including defenses and intoxication. As such, a somewhat lengthy

set of instructions to the jury was plainly unavoidable. Petitioner's claims that the judge improperly shifted repeatedly from the elements of the crime to the principles of law is similarly without merit. As the Report states, because certain elements of the crimes could not be described without reference to principles of law, it was reasonable for the judge to have discussed legal principles along with the charges to which they applied. Accordingly, it was not improper for Petitioner's counsel to not object to these aspects of the jury instructions.

Petitioner's final argument with respect to the jury instructions is similarly flawed. The instructions given by the trial judge did not give the jury the impression that consideration of the EED defense was optional. The statement on which Petitioner basis his argument was given in the context of the prosecution's burden of proof to the jury, in which the trial judge properly explained that the burden of proving guilt beyond a reasonable doubt lies exclusively with the prosecution. In that context, the court reminded the jury that even if the jury found that the prosecution had met its heavy burden, it would still have to consider Petitioner's affirmative defense.

Similarly, Petitioner's argument that the trial court gave "contradictory instructions" regarding the EED defense's applicability based on a minor shift in language from "then" to "and" is without merit. The record shows that the trial judge repeatedly reminded the jury that the EED defense was a defense to all intentional murder charges, and it is implausible that the jury could become mistaken as to the applicability of the EED defense based on the trial judge's use of this language.

   3. *Prosecution's Statement Regarding Victim*

Petitioner argues he was provided ineffective assistance of counsel because his attorney did not object when the prosecutor made a statement during summation with regard to

Petitioner's sexual assault of one of the victims. Specifically, Petitioner alleges that the prosecutor's reference to the sexual assault charges were inappropriate because the sexual assault charges against Petitioner had been dismissed, and because the language chosen by the prosecutor was intended to "inflame the passions" of the jury and appeal to religious sentiments.

Petitioner has not demonstrated that he was prejudiced by his attorney's failure to object during the prosecution's summation. As stated in the Report, Petitioner must show that he "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). A court considering whether a petitioner suffered such prejudice must assess the severity of the prosecutor's conduct, steps taken by the trial court to remedy any prejudice, and whether conviction was certain absent the allegedly prejudicial conduct. *Id.*

In this case, Petitioner has not shown such prejudice. The charge of sexually assaulting the victim had been dismissed earlier in the case, but by the time of summation, the jury was already aware that one of the victims had been sexually assaulted, that it was unclear whether or not she had been conscious at the time of the assault, and that Petitioner's DNA had been found inside her body. As such, the prosecution did not misstate the evidence or refer to matters of which the jury was not already aware. There is no reason to conclude that defense counsel's failure to object to the prosecution's statements during summation was professionally unreasonable. Furthermore, in light of the overwhelming evidence presented against the Petitioner at trial, any conclusion that his attorney's failure to object had any significant impact on the jury's verdict is simply without basis.

## CONCLUSION

This Court concurs with Magistrate Judge Katz's Report and Recommendation. As such, it is adopted as the Order of this Court, and the petition for a writ of habeas corpus is hereby DENIED.

SO ORDERED.

May 11, 2013

_____
RICHARD OWEN
UNITED STATES DISTRICT JUDGE